Morris E. Spector, J.
This is an application brought pursuant to subdivision 12 of section 63 of the Executive Law, by the Attorney-General, at the request of the Board of Commissioners of Pilots, for an order restraining the respondents from any further illegal acts in violation of the Navigation Law.
The relevant facts are not in dispute and may be briefly summarized. On February 1, 1971, respondent MacDonald piloted a vessel named the Philippine President Quezon from New London through Hell Gate Channel into the port of New York. On this first passage of Hell Gate, respondent Damasco was the master of the Quezon, a ship owned by respondent Hnited Philippine Lines (HPL). In a similar incident on or about April 27, 1971, respondent MacDonald piloted another HPL vessel, the Philippine -President Magsaysay, through the Hell Gate Channel." Respondent Mendoza was the master of the Magsaysay on this second passage. In transiting Hell Gate on these two occasions without a duly licensed Hell Gate pilot, the petitioner alleges that the four respondents have violated former section 89 of the Navigation Law. To ensure future compliance with sections 88 and 88-a of the Navigation Law, the petitioner now seeks an injunction restraining the respondents from transiting Hell Gate without a duly licensed Hell Gate or Sandy Hook pilot.
Before considering the question of whether the respondents should be restrained, a determination must be made as to whether'this court has jurisdiction over the subject matter of this proceeding. It has long been established by the decisions of the Hnited States Supreme Court that State laws concerning pilotage are regulations of commerce and that they thus fall *458 within that class of powers which may be exercised by the States until Congress shall see fit to act otherwise (Anderson, v. Pacific Coast S. S. Co., 225 U. S. 187, 195 [1912]; U. S. Code, tit. 46, §§ 211-215). In order to compel compliance with the statutes regulating pilotage in the Port of New York, the courts of this State have unhesitatingly enforced the appropriate provisions of the Navigation Law (Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina, 154 Misc. 788 [1931], affd. 235 App. Div. 841 [1st Dept.], affd. 261 N. Y. 455 [1933]). As will be explored at greater length below, injunctive relief is but one measure that may and should, under proper circumstances, be utilized by the State courts in enforcing the pilotage provisions in the Navigation Law.
Another preliminary issue is raised as to whether ‘ ‘ in personam ’ ’ jurisdiction has been obtained over respondents Mendoza and Damasco. Petitioner’s affidavit of service indi-\ cates that these two individuals were never personally served \ in this proceeding. Instead, the notice and petition were served upon the United States Nayigation, Inc. (Navigation) as their alleged agent. In contravention of petitioner’s allegation of “agency”, Navigation has submitted two affidavits asserting that it was never authorized to receive process upon behalf of these respondents and that the latter were never employed by Navigation. Upon this application, the petitioner has not even attempted to refute the contentions in Navigation’s two affidavits. Accordingly, the petition is dismissed as against respondents Mendoza and Damasco for the lack of “in personam” jurisdiction over them.
Under the pertinent portion of the Executive Law (§ 63, subd. 12) the Attorney-General may apply for an injunction “whenever any person shall engage in repeated * * * illegal acts * * * in the carrying on, conducting or transaction of business ”. Generally, this subdivision has been construed quite broadly so that its salutary provisions are applied to all business activity accompanied by repeated acts of illegality (cf. Matter of People v. Ackerman, 24 Misc 2d 83, 84 [1960]).
Commercial maritime traffic in Hell Gate is such a “ business activity ” which must be considered to be within the sphere and the protection of the subdivision 12 of section 63 of the Executive Law. Consequently, the Attorney-General may, as has been alluded to above, properly seek to enjoin repeated acts that are suspected to be illegal under the Navigation Law.
On the dates when the foreign vessels Quezon and the Magsaysay made their passages through the Hell Gate Channel, *459 former section 89 of the Navigation Law was then in effect. In essence, that statute declared it to be unlawful for any person but a duly licensed Hell Gate pilot to guide a foreign ship through that channel. Effective as of July 1, 1971, section 89 was repealed (L. 1971, ch. 943, § 5). On that same day, the amendments to sections 88 and 88-a became effective so that, thereafter, either a duly licensed Hell Gate or Sandy Hook pilot could lawfully direct a foreign vessel through the Hell Gate Channel (L. 1971, ch. 943, ■§§ 1, 2). The principal reason for the simultaneous repeal of section 89 and the corresponding expansion by amendment of sections 88 and 88-a may be readily gleaned from the “ note ” to chapter 943 of the Laws of 1971: “ The Board of Commissioners of Pilots of the state of New York feels it is advisable to combine the functions of pilotage and provisions for pilotage rates covering the Sandy Hook, Sands Point and Execution Rocks areas into one unit since those areas include substantially all of the navigable waters within the port of New York. There is only one Hell Gate pilot remaining in active service and the work within that area west of Sands Point and Execution Rocks is now being substantially covered by licensed Sandy Hook pilots. The sections of the navigation law hereby repealed will be rendered obsolete and unnecessary by virtue of this consolidation.” In this regard, the petitioner does not deny the fact that only one Hell Gate pilot was available for duty to handle the voluminous channel traffic on or about the date of section 89’s repeal. Likewise, there is no denial that Sandy Hook pilots had, in effect, taken over the piloting responsibilities in Hell Gate on or about July 1, 1971.
Generally, statutes are to be construed in accordance with the General Construction Law unless a different meaning is clearly indicated. (General Construction Law, § 110; cf. Southbridge Finishing Co. v. Golding, 2 A D 2d 430 [1st Dept., 1956].) Thus, the repeal of a statute will not normally impair any liability existing prior thereto, and at the time the repeal took effect (General Construction Law, § 93; cf. Empire State Sav. Bank v. Beard, 81 Hun 184 [1894], revd. on other grounds 151 N. Y. 638 [1896]). However, in repealing a statute, the Legislature may directly express an intent to discontinue any liability that may have already accrued thereunder. As an indication of legislative intent, the judiciary may consider the ‘ ‘ note ’ ’ appended to a bill or a statute; in many instances, the ‘ ‘ note ’ ’ will clearly set forth the Legislature’s object in enacting or repealing a particular statute (56 N. Y. Jur., Statutes, § 185). *460 Upon its face, the “ note ” to chapter 943 takes recognition of the fact that, by reason of the drastic shortage of Hell Gate pilots, section 89 of the Navigation Law had all but become impracticable, inoperative and otherwise unenforceable by the Board of Commissioners of Pilots. In view of this exigency, it would have been inane fo.r the Legislature to extend liability under section 89 after its repeal and this court will not construe the over-all intent of chapter 943 to convey that meaning.
Consequently, this proceeding, which was instituted in December of 1971, does not state a meritorious basis for relief under former section 89 of the Navigation Law. Likewise, the amended petition fails to allege any repeated acts of illegality under sections 88 and 88-a of that same statute. Therefore, the amended petition must be dismissed for failure to state any cause of action against respondents MacDonald and UPL.